IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HAROLD RAY DUNCAN, JR.,

        Plaintiff,

v.                            CIVIL ACTION NO. 3:10-1421

GILEAD SCIENCES, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Gilead Sciences, Inc.'s Motion to Dismiss. [Doc. No. 4]. For the following reasons, the Court **GRANTS** the motion.

**I.
FACTUAL AND
PROCEDURAL HISTORY**

On December 8, 2010, Plaintiff Harold Ray Duncan, Jr. filed a Complaint in the Circuit Court of Putnam County. In his Complaint, Plaintiff asserts that, in or around April of 2006, he began working as a pharmaceutical sales representative for CV Therapeutics. Around November 2008, CV Therapeutics was purchased by Defendant. Plaintiff continued working in his position until he was terminated in November of 2009.

After his discharge, Defendant posted an employment vacancy on-line which read: "This is a field position that is in our IHD division covering our Charleston territory replacing Ray

Duncan." Plaintiff asserts that Defendant never mentions terminated employees by name, and it singled him out in this posting. Plaintiff argues the posting was outrageous and constituted intentional infliction of emotional distress, defamed his character, and placed him in a false light.

On December 30, 2010, Defendant removed the case to this Court based upon diversity jurisdiction. Defendant then moved to dismiss for failing to state a cause of action for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon review, the Court agrees.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 129 S. Ct. at 1949 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 1950. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## III.
## DISCUSSION

### A.
### Tort of Outrage and
### Intentional Infliction of Emotional Distress

In *Harless v. First National Bank in Fairmont*, 289 S.E.2d 692 (W. Va. 1982), the West Virginia Supreme Court explained that the "Tort of Outrage" and "Intentional Infliction of Emotional Distress" allow recovery "for emotional distress arising out of extreme and outrageous conduct intentionally or recklessly caused by the defendant[.]" 289 S.E.2d at 703 (citing Restatement (Second) of Torts § 46). Liability is imposed only when conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Dzinglski v. Weirton Steel Corp.*, 445 S.E.2d 219, 224 (W. Va. 1994) (internal quotation marks and citations omitted). In addition, in *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419 (W. Va. 1998), the West Virginia Supreme Court further stated that in order to succeed on an intentional infliction of emotional distress claim, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, in part, *Travis*. It is the role of the trial court to make an initial determination as to "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to

constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Id.* at Syl. Pt. 4, in part.[1]

In this case, the Court agrees with Defendant that Plaintiff has failed to sufficiently allege a claim for outrage and intentional infliction of emotional distress. The Court finds, as a matter of law, that the words "replacing Ray Duncan" on an internet job posting fall far below what may reasonably be considered as outrageous, even if Defendant does not normally mention names in job postings. There is nothing atrocious or intolerable about the language, and it in no way extends beyond the bounds of decency. In fact, the word "replacing" does not even necessarily carry a negative connotation. Although in this case Plaintiff was terminated, it is not self-evident from the word "replacing." It may be just as likely that a reader would believe Mr. Duncan may have been promoted, transferred, or voluntarily left his position. Even if the reader assumes that Mr. Duncan was fired, such implication is not outrageous. As indicated by Defendant, courts have found

---

[1] See also Justice Franklin D. Cleckley's concurring opinion in *Hines v. Hills Dept. Stores, Inc.*, 454 S.E.2d 385 (W. Va. 1994), stating:

> The role of both the trial court and appellate court is limited to determining whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If reasonable persons could differ on the issue, the question is one for the jury. What, too often, is overlooked . . . is the distinct difference between determining whether conduct may reasonably be considered outrageous, a legal question, and whether conduct is in fact outrageous, a question for jury determination.

454 S.E.2d at 392 (Cleckley, J., concurring) (citation omitted).

much more embarrassing situations in employment contexts have not risen to the level of outrageous. *See, e.g. Burgess v. Gateway Commc'ns, Inc.-WOWK-TV*, 26 F. Supp.2d 888, 894 (S.D. W. Va. 1998) (finding "insults, indignities, threats, annoyances, and petty oppressions," which included making fun of the former employee's speech impediment, were "unpleasant," but not actionable as outrageous); *Dzinglski*, 445 S.E.2d at 227 (stating that the employer's investigation of alleged improprieties, which included the suspension of the plaintiff pending the investigation, did not constitute outrageous conduct). Accordingly, the Court finds Plaintiff's allegations cannot reasonably be considered outrageous and, therefore, the Court **GRANTS** Defendant's motion to dismiss this claim.

### B.
### Defamation

Plaintiff's next claim is for defamation. A statement may be considered defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983) (quoting the Restatement (Second) of Torts § 559 (1977); internal quotation marks and other citations omitted). For a private individual to establish defamation in West Virginia, the individual must show: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, in part, *Crump*. Summarizing this standard, the West Virginia Supreme Court explained in *Bine v. Owens*, 542 S.E.2d 842 (2000), that "to have a defamation claim, a plaintiff must show that false and defamatory statements were made against him, or relating to him, to a third party who did not have a reasonable right to know, and that the statements were made at least negligently on the part of the party making the statements, and

resulted in injury to the plaintiff." *Bine*, 542 S.E.2d at 846. "Defamation may be accomplished through inference, implication, innuendo or insinuation, as well as through direct reference." Syl. Pt. 4, *Crump*. It is the Court's responsibility to make an initial determination as a matter of law whether a statement is "capable of a defamatory meaning." *Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 26 (W. Va. 2002) (quoting Syl. Pt. 6, *Long v. Egnor*, 346 S.E.2d 778 (W. Va. 1986)).

In this case, the Court finds there is nothing directly defamatory by the language "replacing Ray Duncan." This language, in and of itself, does nothing to harm Plaintiff's reputation, lower his estimation in the community, or deter associations with him. However, Plaintiff argues the language implies he was terminated, and potential employers reading the posting could believe he did something wrong.

As stated by this Court in *Tomblin v. WCHS-TV8*, Civ. Act. No. 3:08-1294, 2010 WL 324429 (S.D. W. Va. Jan. 21, 2010), a plaintiff asserting a claim of defamation by implication has a heavy burden. 2010 WL 324429, at *7. In *Chapin v. Knight-Ridder Inc.*, 993 F.2d 1087 (4th Cir. 1993), the Fourth Circuit explained:

> A defamatory implication must be present in the plain and natural meaning of the words used. Moreover, because the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true. The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference.

993 F.2d at 1092-93 (footnote and citations omitted). In this case, the Court first finds that the plain and natural meaning of the words "replacing Ray Duncan" does not impart a defamatory implication. Second, even assuming for the sake of argument the words "replacing Ray Duncan" imply Plaintiff was involuntarily terminated, Plaintiff admits that he was terminated. Thus, there is no false innuendo because such innuendo is, in fact, true. Third, the Court finds there is nothing in the language which affirmatively suggests that Defendant intends or endorses an inference that Plaintiff was fired. Accordingly, Plaintiff cannot establish a prima facie case for defamation.

Plaintiff argues, however, he should be permitted to explore Defendant's motives and purpose for stating "replacing Ray Duncan" in the posting even if it is true. The Court disagrees. Plaintiff's burden is very clearly set forth in *Crump*, and he must prove the falsity of the statement or defamatory implication. It is well-established that truth is a complete defense to an allegation of defamation. *Chhaparwal v. West Virginia Univ. Hosps., Inc.* Civ. Act. No. 1:07cv89, 2009 WL 2959882, at *5 (N.D. W. Va. Sept. 9, 2009) (stating "[t]ruth is an absolute defense to a defamation claim" (citing *Crump*)); *Serian v. Penguin Group (USA), Inc.*, Civ. Act. No. 1:08cv74, 2009 WL 2225412, at *9 (N.D. W. Va. July 23, 2009) (finding true statements are not actionable); *Wilkerson v. Charleston Police Dept.*, Civ. Act. No. 2:06-0866, 2009 WL 1506717, at *12 (S.D. W. Va. May 27, 2009) (providing "truth is a complete defense to a claim of defamation").[2] Thus, as Plaintiff

---

[2]It is a defendant who may argue that, if the communication is true and "published with good motives, and for justifiable ends[,]" . . . even if the communication complained of is defamatory and actual malice is present, the plaintiff cannot recover." *Crump*, 320 S.E.2d at 79 (internal quotation marks and citations omitted).

cannot establish a defamation claim, the Court **GRANTS** Defendant's motion with respect to this claim.

## C.
## False Light Invasion of Privacy

As described in *Crump*, there are at least four ways in which someone's privacy may be invaded: "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. Pt. 8, *Crump*. In this case, Plaintiff asserts Defendant's posting created publicity which placed him in a false light before the public. To establish his claim of false light, Plaintiff must demonstrate: "(1) the false (2) publication (3) of private facts (4) portraying the plaintiff in a false light (5) which would be highly offensive to a reasonable person." *Curran v. Amazon.com, Inc.*, Civ. Act. No. 2:07-0354, 2008 WL 472433, at *8 (S.D. W. Va. Feb. 19, 2008) (citing *Benson v. AJR, Inc.*, 599 S.E.2d 747, 752 (W. Va. 2004) (per curiam);[3] *Crump*, 320 S.E.2d at 87-88; *Davis v. Monsanto Co.*, 627 F. Supp. 418, 421 (S.D. W. Va. 1986); Restatement (Second) of Torts § 652D (1977)). As stated earlier, neither is a plain reading of the posting false, nor does it impart a false innuendo. Thus, it does not paint Plaintiff in a false light. Additionally, the Court finds that no reasonable person could find the posting highly offensive. Therefore, the Court **GRANTS** Defendant's motion to dismiss this claim.

---

[3]*Benson* described the burden of a plaintiff as showing: "(1) that there was a public disclosure by the Defendant of facts regarding the Plaintiff; (2) that the facts disclosed were private facts; (3) that the disclosure of such facts is highly offensive and objectionable to a reasonable person of reasonable sensibilities; and (4) that the public has no legitimate interest in the facts disclosed." 599 S.E.2d at 752 (internal quotation marks and citations omitted).

**IV.**
**CONCLUSION**

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss and **DIRECTS** the Clerk to remove this action from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

       ENTER:	May 9, 2011

       _____
       ROBERT C. CHAMBERS
       UNITED STATES DISTRICT JUDGE